## Case No. 2,506.

### CASTLE v. LEE.

[11 N. B. R. (1875) 80.] [1]

Circuit Court, D. Minnesota.

BANKRUPTCY—SETTING ASIDE PREFERENCE.

To set aside a preference made by an insolvent debtor, not only the fact of preference must be shown, but also that the creditor receiving it had reasonable cause to believe a fraud on the bankrupt act was intended.

[Action by Henry A. Castle, assignee in bankruptcy of J. B. Perrin, against William Lee.] Perrin, the bankrupt, engaged in the lumber business, and owning a saw-mill and conducting a country store, became embarrassed and sold out his business. including a stock of goods, December 1, 1873, to Evans & Bass. According to his testimony he expected to become a partner with the former and one Smythe, and to retain one quarter interest in the concern. This statement he made to the defendant, one of his creditors, who, at the request of Thompson, president of the First National Bank of St. Paul, also a creditor. and a personal friend of the bankrupt, induced the other creditors to take the bankable paper of Bass on six months' time for the amount due them from the bankrupt. The names of the creditors were given Lee, the defendant, by the bankrupt, and upon ascertaining the aggregate amount of indebtedness, it largely exceeded the gross amount in the notes to be given by Bass upon the purchase. The president withdrew the bank claim and consented to permit the bankrupt to apply the notes received from Bass in satisfaction of his indebtedness to the other creditors. It was discovered that in the list of debts given Lee by the bankrupt, the amount due Braden, a creditor, had been omitted, and when his attention was called to it, he said "he could take care of that amount, as he was to have one-fourth interest in the business." which would be remunerative with the new partners and the additional capital put in. The trade was consummated with Evans & Bass, with the consent of the creditors upon the list referred to, and the notes of Bass taken. Afterwards it was ascertained that Perrin had omitted to inform Lee in regard to a large amount of his indebtedness; and having been adjudged a bankrupt the assignee brings this suit to recover from Lee the amount of the Bass note which he took in payment of his debt, alleging that it was a preference, secured in fraud of the bankrupt act. There was some conflict in the testimony, but the above is the statement of facts upon which the court decided the case. The case was tried by the court without a jury.

Gilfillan & Williams, for plaintiff.
Gilman & Clough, for defendant.

[1] [Reprinted by permission.]

NELSON, District Judge. There can be no doubt about the insolvency of Perrin. within the meaning of the bankrupt law, at the time Bass & Co. made an arrangement with him which would cancel a certain amount of indebtedness. He could not meet his obligations as they matured, and in the language of a witness in the case, "I considered from his statement to me. that he would have to close up his business unless he procured some assistance outside." Lee, the creditor and defendant in this suit, at the instigation of the president of the First National Bank of St. Paul, undertook to aid the latter in relieving the bankrupt, and was instrumental in influencing other creditors to consent to take the notes on six months' time of Bass, one of the persons who was negotiating to get possession of the bankrupt's property or business. It is immaterial in this controversy, in the view taken by the court, to consider the motives that induced Lee or any of the creditors to consent to the arrangement, and it may be conceded that they believed that by consenting thereto their claims would be more secure. The assignee brings this action to recover from Lee, on account of a fraudulent preference, and in order to establish his asserted right must prove, not only the fact of insolvency on the part of the bankrupt,and a preference to the creditor by the transaction, having reasonable cause to believe the insolvency of the debtor, but also must show that the creditor had reasonable cause to believe the transaction was in fraud of the bankrupt act [14 Stat. 534].

An examination of the evidence will fail to show an intention to defraud any one. It is undisputed that the amount of the indebtedness exceeded the money to be advanced, or the notes to be given by Bass in case the negotiations succeeded; but the president of the bank who was acting as the friend of the bankrupt. when it was discovered that there might possibly be a failure, agreed to withdraw the claim of the bank, and consent that the other creditors should have the benefit of the arrangement with Bass & Co. There is nothing in the testimony to impeach the transaction, and it is apparent that the utmost good faith characterized all of the negotiations. The statement made by the bankrupt to Lee, according to his testimony, was that "he was getting into a copartnership with Evans & Bass, by which he could fix everything up." There was an apparent conflict between the testimony of the bankrupt and Lee in regard to the amount of the indebtedness; but when the list of creditors, who were settled with. is presented to the bankrupt, he states "that there must have been other names furnished him, but he can't swear that there was."

The list which Lee states was given him by the bankrupt footed up five thousand five hundred and eighty-one dollars and ninety-two cents. The latter thought it would foot up seven thousand dollars; but inasmuch as

he admits that there was quite a large indebtedness owing to other persons residing outside of St. Paul. which he states he never alluded to in any of his conversations with Lee. I am forced to the conclusion. in the face of the positive testimony of Lee, showing that the list of the creditors presented was furnished by the bankrupt, and he (Lee) had no knowledge of any other debts except a small one which was owing to Braden. that more creditors were omitted from the list than those outside of St. Paul. It is but justice to say, however. that no intention to deceive on the part of the bankrupt is deducible from the testimony. His evident desire to bring about a partnership by which he would be enabled to "fix up," led him to suppose that his success for the future was assured. and he could alone "fix up" all the creditors whose names were not on the list furnished, including the Braden claim. which, it was discovered. had been omitted also.

I think that a fraud on the act is not to be inferred, from the fact that Lee accepted payment of his debt under the circumstances, although he knew that the Braden claim of less than one hundred dollars was outstanding and unsettled. He was justified in believing. as did the bankrupt, that the arrangement was of benefit to him, and would secure his success in the future. Judgment must be rendered for the defendant.